KYLE and another, Respondents, vs. CARPENTER and another, Appellants.

*December 5, 1906—January 8, 1907.*

*Partnership: Realty as partnership assets: Pleading: Demurrer: Fraud: Resulting trusts: Statute of frauds: Parol evidence.*

1. In an action to charge defendants as trustees holding the legal title to certain real estate for the plaintiff partnership, it was alleged in the complaint, among other things, that the defendant C. had been a member of a partnership with plaintiffs for

years, conducting business on the premises in dispute, the legal title to one third of which was in each partner in trust for the firm; that, the firm having dissolved by mutual consent, C. retired and sold to plaintiffs all his interest in the firm assets and property, including such real estate; that by the agreement of dissolution the plaintiffs assumed all obligations against the firm, released C. therefrom, and paid him the balance due him on such dissolution; that C. received such agreement, release, and payment in full satisfaction for his interest in the firm property, but failed to make conveyance thereof to plaintiffs; that thereafter the remaining partners for over eight years carried on the same business upon and were in the actual, open possession and occupancy of such real estate without objection or question by C.; that C. had, for the purpose of defrauding plaintiffs, wilfully and wrongfully, and in violation of the trust imposed, conveyed the legal title to such one third to his co-defendant, who accepted such conveyance, with full knowledge of the facts, for the purpose of defrauding the plaintiffs. The complaint prayed that defendants be adjudged to hold the legal title to such real estate in trust for said firm and for the plaintiffs. On appeal from an order overruling a demurrer to such complaint, *held:*

(1) The real estate in question was property belonging to the partnership up to the time of its dissolution.

(2) Although the complaint did not in express terms allege that C. agreed to convey to plaintiffs such legal title, such agreement was necessarily implied from allegations that plaintiffs purchased the real estate from C. and paid him in full the agreed purchase price.

(3) C.'s refusal to convey the legal title to the lands to plaintiffs and his conveyance to his co-defendant was a breach of a trust and a fraud on the plaintiffs.

(4) The transaction between plaintiff and C. did not create an express trust within the calls of sec. 2081, Stats. 1898, but a resulting trust within the calls of sec. 2076 (excepting from the chapter on uses and trusts those arising or resulting by implication of law).

(5) The demurrer was properly overruled.

2. Real estate purchased for partnership purposes and appropriated to those purposes and necessary therefor, always becomes partnership property, and it is immaterial in what manner, or by what agency, the land is bought, or in what name it stands. The partner holding the legal title to land, however it may have come to him, will be held as trustee for the partnership, if it be certain that the land was in fact a part of their joint property as partners.

3. Where a partnership holds land not as the chief purpose of its existence, but as an incident to its business, the statute of frauds does not apply, and the land may be shown to be part of the partnership stock and affected with partnership equities by oral evidence.

4. Real estate so purchased and held is in equity not only considered as the property of the firm for the payment of its debts, but also for the purpose of adjusting the equitable claims of the copartners between themselves.

APPEALS from orders of the circuit court for Dunn county: E. W. HELMS, Circuit Judge. *Affirmed.*

Each of the defendants separately appeals from the order overruling his demurrer to the complaint, seeking to charge the defendants as holding the legal title to the undivided one-third of the real estate described for the firm of Kyle Bros. & Co. and the plaintiffs. The complaint alleges, in effect, that on and for some time prior to December 13, 1893, these plaintiffs and one H. T. C. were copartners, doing a general mercantile business at Downsville, Wisconsin; that at the time of the formation of that copartnership the firm purchased the seventy acres of real estate therein described and the fifteen acres of real estate therein described, with the store building and the elevator building thereon, and such real estate was conveyed to such copartners—the plaintiffs and H. T. C.—jointly and in trust for such firm; that during the existence of such copartnership such real estate was by them considered and treated as partnership property, and the firm was charged with the same, and each individual partner was credited with his share thereof on the books of said firm, and said partnership business was carried on upon said real estate; that December 13, 1893, said H. T. C. retired from said firm and sold to these plaintiffs, and these plaintiffs purchased, all the right, title, and interest of said H. T. C. in and to the property of such firm, including such real estate. At or about the same time it was agreed by and between these plaintiffs and the defendant *Curtiss* that said *Curtiss* would

take the interest which said H. T. C. had in such partnership property and would become a member of such firm with the plaintiffs and continue the mercantile business of such old firm; that in pursuance of such agreement said new firm of Kyle Bros. & Co. did enter into and conduct such business, and said *Curtiss* agreed to pay such firm $2,795.03 for one-third interest therein, and charged himself on the books of said firm with the sum of $1,000, and executed his note to said firm for $1,500 in pursuance of such agreement; that these plaintiffs caused said H. T. C. to convey to said *Curtiss* the legal title of the undivided one-third of such real estate; that during all the time said new partnership was in existence its assets consisted of a stock of merchandise and said real estate, with the store building in which such business was carried on and the elevator thereon situated, all of which was considered and treated as partnership property, and said new firm was charged therewith on its books, and each of these plaintiffs and said *Curtiss* was credited with one third of the value thereof, and said partnership business was carried on upon said real estate and used exclusively in such partnership business; that all of said real estate and said personal property was the property of said partnership, and the legal title to said real estate was in said plaintiffs and said *Curtiss* in trust for said partnership; that May 25, 1897, said partnership was dissolved by mutual consent, said *Curtiss* retiring from the firm and selling to these plaintiffs, and these plaintiffs buying, all the right, title, and interest of said *Curtiss* in said partnership property; that it was further agreed by the terms of such agreement of dissolution that these plaintiffs would assume all obligations against said firm; that they would release said *Curtiss* from any obligation to said firm, including the $1,500 note and indebtedness of said *Curtiss,* given at the time he purchased an interest in said firm and which still remained unpaid, and further agreed to give *Curtiss* credit on the books of said firm of $500; that after

giving him such credit there was still due to him from such firm $322.59, which amount these plaintiffs paid to said *Curtiss* and he received the same in full payment and satisfaction of his interest in said firm and its property of every kind; that ever since such time, May 25, 1897, these plaintiffs have carried on such business under the firm name of Kyle Bros., and have been in the actual and open possession and occupancy of said real estate, and the said *Curtiss* has never made any claim thereto, except by the making of the deed of said premises to one *Carpenter* as hereinafter alleged; that October 9, 1905, the said *Curtiss* wilfully and wrongfully, and in violation of the trust in which he held such real estate, did execute and deliver to the defendant *Carpenter* a deed to an undivided one-third of such real estate; that said *Carpenter* wilfully and wrongfully, and for the purpose of defrauding these plaintiffs, accepted such deed and caused the same to be recorded in the office of the register of deeds October 12, 1905, and has since such time claimed to be the owner of such undivided one-third of said real estate by virtue of such deed; that at the time of accepting such deed said *Carpenter* well knew that these plaintiffs were the real owners of such real estate and that said *Curtiss* held the legal title thereof in trust for them.

*C. M. Hilliard,* for the appellants.

For the respondents there was a brief by *Bundy & Varnum* and *J. W. McCauley,* and oral argument by *R. E. Bundy.*

CASSODAY, C. J.    The facts alleged in the complaint are of course admitted by the demurrer.    From such facts it appears that after the defendant *Curtiss* had been in partnership with the plaintiffs about three and one-half years under the firm name of Kyle Bros. & Co., conducting the business mentioned upon the premises described, the firm was dissolved by mutual consent, *Curtiss* retiring from the firm and selling to the plaintiffs all his right, title, and interest in and

to the assets and property of the firm, including said real es-
tate, and in consideration therefor the plaintiffs, in and by
the agreement of dissolution, assumed all obligations against
the firm and released the said *Curtiss* from any and all obliga-
tions to the firm, including his indebtedness mentioned, which
was thereupon credited to him on the books of the firm, and
the plaintiffs also paid to said *Curtiss* the balance due him
on such dissolution; and said *Curtiss* received such release,
agreements, and payment in full satisfaction for his undi-
vided one-third interest in and to the assets and property of
said firm of every kind, including said real estate, but said
*Curtiss* failed to make any conveyance of said real estate to
plaintiffs.    It further appears that ever since May 25, 1897,
the plaintiffs have carried on such business under the firm
name of Kyle Bros., upon and in the actual and open posses-
sion and occupancy of said real estate, without any objection
or question from said *Curtiss,* and that for the purpose of de-
frauding the plaintiffs the said *Curtiss* on October 9, 1905,
wilfully and wrongfully and in violation of the trust reposed
in him conveyed the legal title to the undivided one-third in-
terest in said real estate to the defendant *Carpenter,* who wil-
fully and wrongfully, and with full knowledge of the facts
stated, accepted such conveyance for the purpose of defraud-
ing the plaintiffs.

Upon the facts stated it s difficult to perceive upon what
theory the defendants can withhold from the plaintiffs the
legal title to the lands in question.    They were property which
belonged to the partnership up to the time of its dissolution.
The terms of dissolution were mutually agreed upon.    In such
mutual agreement the plaintiffs assumed all obligations against
the firm and released *Curtiss* from any and all his indebted-
ness to the firm.    By such agreement the plaintiffs were to
have all the right, title, and interest of *Curtiss* in the partner-
ship property, including the real estate, for which the plaint-
iffs paid him the agreed price, which *Curtiss* received in full

payment and satisfaction for such right, title, and interest. True, the complaint does not in express terms allege that *Curtiss* agreed to convey to the plaintiffs such legal title, but it does allege that the plaintiffs purchased the real estate from *Curtiss* and paid him in full the agreed purchase price, and this necessarily implied an agreement to so convey. The agreement thus made between the parties was fully executed, except that *Curtiss* failed to convey such legal title to the plaintiffs. The prayer of the complaint is that the judgment shall declare and establish that the respective defendants held and hold the legal title to the undivided one-third of said real estate in trust for the firm of which *Curtiss* was a member and for these plaintiffs. It is true, as argued by counsel for the defendants, the transaction did not create an express trust within the meaning of the statutes. Sec. 2081, Stats. 1898. The chapter in which that section is found abolishes "uses and trusts, except as authorized and modified" therein, but declares that the sections of that chapter shall "not extend to trusts arising or resulting by implication of law." Sec. 2076, Stats. 1898. Such resulting trusts have frequently been recognized and enforced by this court. *Whiting v. Gould,* 2 Wis. 552; *Orton v. Knab,* 3 Wis. 576; *Martin v. Morris,* 62 Wis. 418, 22 N. W. 525; *Davenport v. Stephens,* 95 Wis. 456, 458, 70 N. W. 661.

It is elementary that "real estate purchased for partnership purposes and appropriated to those purposes, paid for by partnership funds and necessary for partnership purposes, always becomes partnership property. Nor does it seem to be material in what manner, or by what agency, the land is bought, or in what name it stands." Parsons, Partn. (4th ed.) § 265. In the same section it is said:

"We consider it an established rule in equity that any party holding the legal title to land, however it may have come to him, will be held as trustee for the partnership, if it be certain that the land was in fact a part of their joint property as partners."

Kyle v. Carpenter, 130 Wis. 310.

Another text-writer says:

"Where a partnership holds land not as the chief purpose of its existence, but as an incident to its business, the statute of frauds does not apply, and the land may be shown to be part of the partnership stock and affected with partnership equities by oral evidence." 1 Bates, Partn. § 301.

Such statements are amply supported by adjudged cases. Among others, see *Fairchild v. Fairchild*, 64 N. Y. 471; *Greenwood v. Marvin*, 111 N. Y. 423, 19 N. E. 228; *Sherwood v. St. P. & C. R. Co.* 21 Minn. 127; *Marsh v. Davis*, 33 Kan. 326, 6 Pac. 612. Such real estate, so purchased and held, is in equity not only considered as the property of the firm for the payment of its debts, but also "for the purpose of adjusting the equitable claims of the copartners as between themselves." *Smith v. Tarlton*, 2 Barb. Ch. 336. Here, upon the dissolution of the firm and in the adjustment of such equitable claims between the partners, *Curtiss* was to convey his legal title to the lands to plaintiffs; and his refusal to do so and his conveyance to *Carpenter* was a breach of trust and fraud on the plaintiffs. In the opinion of the trial court the facts alleged entitled the plaintiffs to a specific performance of the contract to convey to them the legal title to the real estate. Of course the power of courts to compel specific performance is not abridged by the statute of frauds. Sec. 2305, Stats. 1898. The complaint does not in terms pray for such specific performance, and so we refrain from further considering the question here. We perceive no ground for claiming that the cause of action alleged is barred by the statutes of limitation.

*By the Court.*—Both orders of the circuit court appealed from are affirmed.